## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE A.,** | : | |
| **THROUGH HIS PARENTS AND** | : | |
| **NEXT FRIEND, TAMEKA A.** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **WALLINGFORD SWARTHMORE** | : | |
| **SCHOOL DISTRICT,** *et al.*, | : | **No. 09-3817** |
| **Defendants.** | : | |

### <u>MEMORANDUM</u>

**Schiller, J.**                                                   **September 3, 2009**

George A. ("Ricky"), through his mother, Tameka A., and Tameka A. in her own right and as Ricky's parent and natural guardian, sued the Wallingford Swarthmore School District ("WSSD") and Rudolph Rubeis, the Superintendent for WSSD.  The Complaint contains six counts but the issue currently before the Court is where Ricky will start his senior year of high school.  To settle that issue, Ricky and his mother filed a motion for a temporary restraining order, claiming that WSSD's refusal to allow Ricky to attend Strath Haven High School ("Strath Haven") violates the "stay-put" provision of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415(j).  The Court held a hearing on the motion on September 1, 2009. For the reasons that follow, the motion is granted.


## I.    BACKGROUND

Ricky is eighteen years old and lives with his mother, Tameka, in the Chester Upland School District ("CUSD").  He cannot hear at all in his left ear and has only limited residual

hearing in his right ear.  His hearing loss cannot be corrected with the use of hearing aids.  His disability qualifies him for special education services under the IDEA.  Ricky requires intensive language remediation and needs the daily support of a teacher of the deaf.  He also needs appropriate acoustic accommodations, daily equipment checks and weekly consultations by an audiologist.

Although Ricky lives in the CUSD, since age three he has attended the hearing support program operated by the Delaware County Intermediate Unit ("DCIU"), which is located in the WSSD.  The DCIU teaches deaf children how to listen and speak.  It has provided Ricky numerous services beginning in pre-school, including digital hearing aids and FM auditory services.  Ricky was not attending his neighborhood school in the CUSD because, according to his June 11, 2008 Individualized Education Plan ("IEP"), "Special Education supports and services required in the student's IEP cannot be provided in the Neighborhood School." Therefore, Ricky has attended Strath Haven since ninth grade. He is a member of the Strath Haven community, as he has been mainstreamed for math, history, career college preparation, and gym; he also played on the school's football team.

During the 2007-08 school year, Ricky was involved in two physical altercations at school.  As a result, his IEP team conducted a functional behavior assessment and his IEP was modified in June of 2008 to address his behavioral issues.  The June 2008 IEP is the last one with which Tameka agreed.  The IEP anticipated that the duration of services and programs offered to Ricky would extend to June 11, 2009 and that Ricky would graduate in 2010.

The IEP pointed out that Ricky's hearing loss interfered with his ability to access oral information as well as his ability to fully comprehend information, such as directions, and new

concepts, when presented orally.  Although not behaviorally aggressive or abusive, Ricky often refused support and instruction from his hearing support teacher.  The IEP noted however that Ricky's willingness to receive help had recently improved and that he also put forth a more concerted effort to succeed in his schoolwork.  He also experienced "emotional frustration" due to the loss of one grandparent and the sickness of another.  The IEP reported that Ricky has good social skills, is inquisitive, athletic, artistic, and has a good sense of humor.

According to the IEP, Strath Haven was the "agency responsible" for helping Ricky take the ACT exam, meeting college entrance requirements, and providing a guidance counselor to discuss postsecondary schooling options.  The IEP also articulated extensive goals and objectives aimed at, *inter alia*, expanding his vocabulary, sharpening his listening skills, and improving the intelligibility of his speech.  The IEP also called for program modifications and specially designed instruction to assist Ricky's learning, including a note taker, access to captioned films, access to an FM system and monitoring of his auditory equipment.  Ricky also received consultations with an audiologist, psychological counseling, and spent time in a small group for language and speech help.

In October of 2008, Ricky was involved in another physical altercation at Strath Haven for which he was suspended for five days.  On October 28, 2008, with the June 11, 2008 IEP still in effect and following Ricky's five-day suspension, Ricky's IEP team met to determine whether his outburst was a manifestation of his disability.  Ultimately, the team concluded that Ricky's disability did not cause the conduct for which he was suspended nor was it directly or substantially related to his disability.  It was noted, however, that his disability may have been a small reason for his behavior.  The IEP team also found that Ricky's altercations were not the

direct result of a failure to implement his IEP.  Consequently, a forty-five day diagnostic placement in another school was recommended to help determine his needs.  A Notice of Recommended Educational Placement ("NOREP") dated October 29, 2008, proposed to change Ricky's educational placement for disciplinary reasons and stated that he was to attend County Alternative High School for a forty-five day placement.  The NOREP stated that if the action was not approved by Ricky's parent, he would remain in his current placement only if mediation or a due process hearing was requested.  If not, the recommended action would be implemented. Tameka expressed her desire to explore other alternatives but relented and signed the NOREP on December 2, 2008 because Ricky was not permitted to attend school until she signed.  On December 4, 2008, Ricky began his schooling at the County Alternative High School, which maintains a segregated high school environment for students with behavioral and emotional needs.

A reevaluation report completed while Ricky was at County Alternative High School concluded that he appeared to be working hard to avoid conflicts and physical altercations with peers and that he was often pleasant and cooperative.  His grades were also much improved. However, the report also noted that both Ricky and Tameka wished for his return to Strath Haven.

A proposed IEP dated June 30, 2009 sought to place Ricky at Chester High School for his senior year but notes that "Special Education supports and services required in the student's IEP cannot be provided in the neighborhood school."  Finally, an August 6, 2009 NOREP recommended that Ricky enroll in Chester High School for the 2009-10 academic school year because he was not permitted to return to Strath Haven.  A number of options were considered,

including a return to WSSD, but Strath Haven refused.  Tameka refused to agree to the

placement and sought a due process hearing.


## II.    DISCUSSION

The "stay-put" provision of the IDEA, 20 U.S.C. § 1415(j), states that "during the

pendency of any proceedings conducted pursuant to this section, unless the State or local

educational agency and the parents otherwise agree, the child shall remain in the then-current

educational placement of the child . . . until all such proceedings have been completed."  The

stay-put provision operates as an automatic injunction and prevents schools from unilaterally

altering a student's educational placement and thereby excluding disabled students from school.

*Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996); *Honig v. Doe*, 484 U.S. 305, 323

(1988).  The language of the stay-put provision clearly demonstrates Congress' intent that "all

handicapped children, regardless of whether their case is meritorious or not, are to remain in their

current educational placement until the dispute with regard to their placement is ultimately

resolved."  *Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 190 (3d Cir. 2005) (quoting

*Drinker*, 78 F.3d at 865).

The issue before this Court is what was Ricky's "then-current educational placement" at

the time the dispute arose.  Under the stay-put provision, the current educational placement

"refers to the operative placement actually functioning at the time the dispute first arises.  If an

IEP has been implemented, then that program's placement will be the one subject to the stay put

provision."  *Drinker*, 78 F.3d at 867 (quoting *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618,

625-26 (6th Cir. 1990)).  If no IEP is in effect when the dispute arises, the stay-put placement is

that under which the child is actually receiving instruction at the time the dispute arises.  *See Pardini*, 420 F.3d at 190-91.  The "then-current educational placement" is defined as the IEP "actually functioning when the stay-put is invoked."  *Drinker*, 78 F.3d at 867.  It is usually the placement found in the child's last IEP.  *See S.K. v. Parsippany-Troy Hills Bd. of Educ.*, Civ. A. No. 07-4631, 2008 U.S. Dist. LEXIS 80616, at *39 (D. N.J. Oct. 9, 2008) (citing *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996)).

Ricky's then-current educational placement is at Strath Haven where the DCIU's hearing support program is housed.  The dispute over Ricky's placement occurred prior to the August 6, 2009 NOREP.  Specifically, Tameka voiced concerns about Ricky's forty-five day placement at the County Alternative High School in October of 2008, while the June 11, 2008 IEP was still in place.  The parties attempted to mediate but could not resolve their dispute.  Although Ricky eventually spent time at the County Alternative High School, it was a temporary measure.  At the time he was sent there, his operative IEP placed him at Strath Haven.  The Court is mindful that while Ricky's IEP placed him at Strath Haven, the stay-put provision is not construed so narrowly as to mandate the student remain in the exact physical location where he or she was schooled at the time the dispute arose.  *See Michael C. v. Radnor Twp. Sch. Dist.*, Civ. A. No. 98-4690, 1999 WL 89675, at *3 n.10 (E.D. Pa. Feb. 4, 1999) ("The term 'placement,' however is not synonymous with 'place' . . ."); *see also A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 680 (4th Cir. 2007) (holding that stay-put provision refers to overall educational environment, not precise location where student is educated); *A.W. v. Fairfax County Sch. Bd.*, 372 F.3d 674, 681 (4th Cir. 2004) ("[W]e find little support in the IDEA's underlying principles for [the] assertion that 'educational placement' should be construed to secure his right to attend school in a

particular classroom at a particular location.").  Regardless, he was at Strath Haven because his local school district could not provide him with the necessary support required for his education. He was a member of the WSSD for the majority of his life and had received instruction at Strath Haven as well as participated in extracurricular activities.  The DCIU program and Strath Haven are his then-current educational placement under the IDEA.

Defendants rely on *A.W.* to support their contention that the precise location of the student's education is not relevant, provided no change in services occurs.  As a general matter, the location of the services is not conclusive in determining what constitutes the educational placement of the student.  In *A.W.*, however, the parties did not dispute that the nearby school to which the student was transferred "was materially identical in its educational offerings" and that the student "would be placed in an identical setting."  *A.W.*, 372 F.3d at 683.  Furthermore, the *A.W.* court noted that an indefinite expulsion would "constitute clear and permanent changes in setting" that would violate the stay-put provision.  *Id*.  Finally, while educational placement may not be synonymous with location, it cannot be entirely divorced from the inquiry and this Court cannot overlook the extensive history that Ricky has with WSSD and Strath Haven.  WSSD cannot simply dictate that the physical location where Ricky attends school plays no role in his educational placement and permit him to fumble around from school to school.

Based on the record before the Court, Defendants tried to change Ricky's educational placement in violation of the IDEA.  The Third Circuit has instructed that what constitutes a "change in educational placement" is fact specific and depends upon whether the change is "likely to affect in some significant way the child's learning experience."  *In re: Educ. Assignment of Joseph R.*, 318 F. App'x 113, 119 (3d Cir. 2009) (quoting *DeLeon v. Susquehanna*

*Community Sch. Dist.*, 747 F.2d 148, 153 (3d Cir. 1984)).  "Where the student's existing IEP

calls for public school placement with educational supports to compensate for the child's

disability, the stay-put provision may require that local educational authorities not unilaterally

attempt to alter the IEP by placing the child in segregated, non-regular education classes."

*Michael C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 650 (3d Cir. 2000) (citations omitted).

The Court concludes that Defendants are trying to alter Ricky's educational placement.

Tameka expressed reservations about sending Ricky to the County Alternative High School,

stating that she wished to explore alternatives.  In the end, she agreed to the temporary

placement.  But the record is clear that Ricky's move to the County Alternative High School was

not intended to be permanent, at least not without the concurrence of Ricky's parent.  Repeatedly,

Tameka expressed her desire to have Ricky return to WSSD, where he has spent his entire school

career.  Strath Haven has refused.  Ricky is viewed as a disciplinary problem and Strath Haven

has therefore attempted to alter his educational placement.

WSSD also contends that Ricky can receive all of the services and support he needs at

CUSD.  It also points out that Ricky's academic performance and ability to interact with peers

and adults at County Alternative High School were excellent.  It may be the case that Ricky

would be better off away from Strath Haven, but that decision must be made by the persons

charged with protecting his interests, including his mother.  If she disagrees with his placement

and enforces Ricky's rights and her rights under the IDEA, the administrative process must

proceed.  WSSD cannot impose its will unchecked.

Furthermore, the Court rejects Defendants' argument that the proposed placement for

Ricky is equivalent to the education placement at Strath Haven.  The June 11, 2008 IEP is

extensive in scope with respect to the support and services Ricky has available to him at Strath Haven.  The proposed IEP affords Ricky less intense itinerant hearing support services than the continuous daily intervention he received under the June 11, 2008 IEP.  Additionally, for years, CUSD was unable to meet his needs.  The proposed IEP even reiterates that "Special Education supports and services required in the student's IEP cannot be provided in the neighborhood school."  The Court is thus unconvinced that CUSD is suddenly able to meet his needs. Furthermore, the decision to remove Ricky from Strath Haven was done as a disciplinary measure, not to provide him with the services and support he needs.  The nature of the decision, made before it was established where Ricky could receive the necessary services and support, bolsters the conclusion that Strath Haven set out to first remove Ricky and then determine where to place him.  Now, Ricky faces the possibility of attending a public school that cannot adequately serve his needs.  His mother is objecting to the placement because she believes that services to her son will be greatly diminished; the appropriate course of action is therefore to ensure that Ricky will receive the services he needs until his status is no longer in flux.  The Court holds that WSSD's actions are "likely to affect in some significant way [Ricky's] learning experience." *See Joseph R.*, 318 F. App'x at 119.   Its unilateral action is thus prohibited by the stay-put provision.

The Court heard testimony about Ricky's refusal to accept certain services and support offered to him.  This refusal is unfortunate and if he persists with his resistance, only Ricky will lose.  Additionally, the Court appreciates that Ricky is not the only student attending Strath Haven and that the school must ensure the safety and welfare of the other students.  The Court does not condone Ricky's aggressive behavior, but the law requires that the status quo be

maintained pending a decision on the nature of the services Ricky requires.

Ultimately, Defendants' legal position is untenable. Ricky does not attend Strath Haven at the pleasure of Defendants. He is a member of the WSSD community and if WSSD seeks to remove him, it must follow the IDEA; it cannot unilaterally expel him from his educational placement. This outcome remains unchanged even though Ricky was told prior to his third fight that another altercation could lead to his removal from Strath Haven. Although his mother understood that this was reported to Ricky, this threatened course of action finds no support in a published policy, and even if established practice at Strath Haven, cannot trump the stay-put provision.

Finally, Defendants contend that the stay-put provision is inapplicable because Plaintiffs have not shown that WSSD is the local educational agency charged with providing Ricky free appropriate public education (FAPE). Thus, according to Defendants, WSSD is under no obligation to assure FAPE for Ricky and is not bound by the stay-put provision. This attempt by WSSD to wash its hands of Ricky is detached from the reality of his situation. Interestingly, WSSD puts forth no case law to support its position. WSSD has played a vital role in Ricky's education, largely because his home district could not meet his needs. Furthermore, regardless of WSSD's relationship with Ricky, the IDEA clearly demands that a child stay-put pending administrative proceedings. The focus of the law is on the educational placement of the child. This Court has before it a narrow legal issue and it is not whether WSSD must provide Ricky FAPE. It is where Ricky will begin his senior year of high school. To the extent Defendants rely on Pennsylvania law that allows non-resident pupils to attend out-of-district schools "upon such terms" as the board of school directors deems appropriate, such a law does not grant WSSD

permission to violate the IDEA.  Furthermore, Defendants failed to note that Pennsylvania law also requires that prior to the expulsion of any student, the student must be afforded a "proper hearing."  24 PA. CONS. STAT. § 13-1318.  The record gives no indication that such a hearing occurred.

**III.     CONCLUSION**

The stay-put provision of the IDEA compels WSSD to permit Ricky to attend Strath Haven pending the resolution of his due process hearing.  An appropriate Order will be docketed with this Memorandum.